UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ELECTRONICS AND TELECOMMUNICATIONS
RESEARCH INSTITUTE,

                Plaintiff,

    - against -

ACACIA RESEARCH GROUP, LLC, formerly known as
ACACIA PATENT ACQUISITION LLC,

                Defendant.
------------------------------------------------------------------X

JUDGE BRODERICK

**15 CV 3419**

ECF case

**COMPLAINT**

Plaintiff, Electronics and Telecommunications Research Institute ("ETRI"), by its attorneys, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, for its complaint against defendant, Acacia Research Group, LLC, formerly known as Acacia Patent Acquisition LLC ("Acacia"), alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action based on the complete diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000.00.

2.    The contracts at issue in this action designate the New York state and federal courts as the exclusive forum for any litigation arising out of or relating to those agreements.

## **PARTIES**

3.   ETRI is a South Korean non-profit government-funded research institute headquartered in Daejeon, Republic of Korea.

4.   ETRI is a world leader in information technology innovation and patent development, consistently registering more new patents annually than any other government agency, university, or research institute in the world. In April 2014, Intellectual Property Today, a prominent intellectual property law periodical, ranked ETRI as the number one research establishment in the world measured by the number and strength of U.S. patents granted.

5.   Upon information and belief, Acacia is a Texas limited liability corporation headquartered in Plano, Texas.

6.   Acacia licenses and enforces patents on behalf of patent holders. According to the 2014 annual report filed by Acacia's parent company, Acacia Research Corporation, Acacia "assist[s] patent owners with the prosecution and development of their patent portfolios, the protection of their patented inventions from unauthorized use, the generation of licensing revenue from users of their patented technologies and, where necessary, with the enforcement against unauthorized users of their patented technologies through the filing of patent infringement litigation."

## FACTS

### A. The Exclusive Licensing Agreements

7. ETRI owns certain U.S. patents and related foreign patents (collectively, the "Patents").

8. ETRI has invested substantial time and resources to research, develop, and register the Patents, which are widely recognized as valuable intellectual property assets.

9. In 2010, ETRI and Acacia entered into two exclusive licensing agreements, dated January 14, 2010 and May 7, 2010 (the "Agreements"). In accordance with the confidentiality provisions contained in the Agreements, copies are not annexed to this pleading.

10. Under Section 1.1 of the Agreements, ETRI assigned Acacia the worldwide exclusive license rights to the Patents, including the right to sublicense and enforce the Patents.

11. In exchange, Acacia agreed in Section 3.1 of the Agreements to pay ETRI 50% of the net proceeds ("Net Proceeds") Acacia obtained from its licensing and enforcement efforts (the "Royalty Payments"). Net Proceeds are defined in Section 3.1 of the Agreements as the total recoveries obtained by Acacia from the licensing and enforcement of the Patents, less third-party costs and expenses.

12. Under Section 3.3 of the Agreements, all Royalty Payments are due within 30 calendar days after the end of each quarter.

13. Under Section 6.1 of the Agreements, Acacia must use good faith efforts to license and enforce the Patents.

### B. Acacia's Breach of the Agreements

14. Upon information and belief, between 2010 and 2013, Acacia licensed its entire patent portfolio, including the Patents, to various corporations, including Microsoft, Apple, Oracle, Cisco, and Stryker (the "Companies").

15. Upon information and belief, Acacia entered into licensing agreements with each of the Companies individually (the "Acacia Licenses").

16. Upon information and belief, as part of the Acacia Licenses, Acacia granted the Companies "covenants not to sue" with respect to the Patents (the "Covenants").

17. Upon information and belief, Acacia entered into, or was in the process of negotiating, some of the Acacia Licenses before it executed the Agreements.

18. Upon information and belief, Acacia knowingly or recklessly failed to disclose to ETRI the existence, or potential future existence, of the Acacia Licenses before the parties executed the Agreements.

19. According to press reports, Acacia was paid more than $100 million under the Acacia Licenses for licensing its entire patent portfolio, including the Patents. Although the terms of the Acacia Licenses are not publicly available, upon information and belief, this figure is substantially greater than $100 million.

20. Acacia did not inform ETRI that it had entered into the Acacia Licenses and granted the Covenants or that it had received compensation as a result.

21. Acacia has not remitted any Royalty Payments to ETRI for the Acacia Licenses or the Covenants.

4

22. Upon information and belief, all but one of the Covenants run with the Patents in perpetuity.

23. The encumbered Patents are worth substantially less than they would be if they were unencumbered.

24. Had ETRI known prior to executing the Agreements that Acacia intended to encumber the Patents without compensating ETRI, ETRI would never have entered into the Agreements.

25. ETRI has fully performed all of its obligations under the Agreements.

## C. Acacia's Refusal to Permit ETRI to Perform an Appropriate Audit

26. Under Section 3.3 of the Agreements, Acacia is obligated to report to ETRI within 30 days after the end of each calendar quarter the total recoveries, costs, and Net Proceeds for the Patents (the "Quarterly Reports").

27. ETRI has the right under Section 5.2 of the Agreements to annually audit any of the Quarterly Reports by examining, among other items, "[Acacia]'s records pertaining to this Agreement."

28. On or about April 3, 2015, ETRI sent an audit demand letter (the "Audit Demand Letter") to Acacia seeking to exercise its audit rights.

29. Acacia responded to the Audit Demand Letter on April 29, 2015 by advising that it would only provide records relating to previously disclosed licensing and enforcement efforts, and that it had "not reported any recoveries related to any Covenants that may have been granted to [Microsoft, Apple, Oracle, Cisco or Stryker] because no such recoveries were ever received."

5

30.     Given public reports that Acacia was paid more than $100 million for licensing its entire patent portfolio, including the Patents, an audit in which ETRI is precluded from reviewing records relating to the Companies would be a wasted effort.

31.     Due to Acacia's breaches, ETRI has been, and continues to be, damaged in an amount to be determined at trial, but believed to be in excess of $10,000,000.

## Claim
### (Breach of Contract)

32.     ETRI repeats the allegations contained in paragraphs 1 through 31.

33.     Acacia has materially breached the Agreements by failing to disclose the Acacia Licenses to ETRI, failing to make Royalty Payments, failing to provide complete and accurate Quarterly Reports, and failing to permit ETRI to conduct an appropriate audit.

34.     Acacia's material breaches of the Agreements caused, and continue to cause, ETRI to sustain direct damages, lost profits and consequential and related damages in an amount to be determined at trial, but believed to be in excess of $10,000,000.

**WHEREFORE**, ETRI seeks judgment as follows:

A.      Awarding ETRI judgment on its claim in an amount to be determined at trial;

B.      Awarding ETRI pre-judgment and post-judgment interest, at the statutory rate or the rate provided under the Agreements, as may be determined by the Court;

C.      Awarding ETRI the costs and reasonable attorneys' and other fees incurred in this action;

D.      Such other and further relief as to the Court deems just and proper.

Dated: New York, New York
       May 1, 2015

                                            **INGRAM YUZEK GAINEN CARROLL
& BERTOLOTTI, LLP**
*Attorneys for Plaintiff Electronics and
Telecommunications Research Institute*

By: _____
        David G. Ebert
        Evan T. Raciti
250 Park Avenue, 6th Floor
New York, New York 10177
(212) 907-9600
debert@ingramllp.com
eraciti@ingramllp.com