UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
                                                                           :
ELECTRONICS AND TELECOMMUNICATIONS                                         :
RESEARCH INSTITUTE,                                                        :        15-CV-3419 (VSB)
                                                                           :
                                        Plaintiff,                         :        ECF case
                                                                           :
                        - against -                                        :
                                                                           :
                                                                           :
ACACIA RESEARCH GROUP, LLC, formerly known as                             :
ACACIA PATENT ACQUISITION LLC,                                             :
                                                                           :
                                        Defendant.                         :
-------------------------------------------------------------------------- X

## PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff, Electronics and Telecommunications Research Institute ("ETRI"), by its attorneys, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, for its statement under Local Rule 56.1, states that there is no genuine issue to be tried regarding the following material facts:

1.      Defendant, Acacia Research Group, LLC, formerly known as Acacia Patent Acquisition LLC ("Acacia"), licenses and enforces patents on behalf of patent holders. (Affidavit of David G. Ebert ("Ebert Aff."), Exhibit ("Ex.") I, at F-9.)

2.      According to the 2015 annual report filed by Acacia's parent company, Acacia Research Corporation:

> [Acacia Research Corporation's ("ARC")] operating subsidiaries invest in, license and enforce patented technologies. [ARC's] operating subsidiaries partner with inventors and patent owners, applying their legal and technology expertise to patent assets to unlock the financial value in their patented inventions.

                        *        *        *

519427_1/03941-0002

In general, revenue arrangements provide for the payment of contractually determined fees in consideration for the grant of certain intellectual property rights for patented technologies owned or controlled by [ARC's] operating subsidiaries. These rights typically include some combination of the following: (i) the grant of a non-exclusive, retroactive and future license to manufacture and/or sell products covered by patented technologies owned or controlled by our operating subsidiaries, (ii) a covenant-not-to-sue, (iii) the release of the licensee from certain claims, and (iv) the dismissal of any pending litigation.

(Affidavit of David G. Ebert ("Ebert Aff."), Exhibit ("Ex.") I, at F-9.)

3.      ETRI, a South Korean government-funded research institute, owns the ETRI Patents. (Ebert Aff., Ex. A, at 1.)

## A. The ETRI/Acacia Agreements

4.      ETRI and Acacia entered into two Exclusive License Agreements, dated January 14, 2010 and May 7, 2010, respectively (jointly, the "ETRI/Acacia Agreements") (Ebert Aff., Ex. A.)

5.      Under Section 1.1 of the ETRI/Acacia Agreements, ETRI assigned to Acacia the worldwide exclusive license rights to the ETRI Patents, including the right to sublicense and enforce the ETRI Patents. (Ebert Aff., § 1.1.)

6.      In exchange, Acacia agreed in Section 3.1 of the ETRI/Acacia Agreements to pay ETRI 50% of the net proceeds ("Net Proceeds") Acacia obtained from its licensing and enforcement of the ETRI Patents. (Ebert Aff., Ex. A, § 3.1.)

7.      "Net Proceeds" is defined in Section 3.1 of the ETRI/Acacia Agreements as the "Total Recoveries" obtained by Acacia from the licensing and enforcement of the ETRI Patents, less third-party costs and expenses. (Ebert Aff., Ex. A, § 3.1.)

2

519427_1/03941-0002

8.    "Total Recoveries" is defined in Section 3.1 as "all amounts actually received by [Acacia] from the licensing and enforcement of the [ETRI] Patents including all licensing proceeds and recoveries from any lawsuits or settlements." (Ebert Aff., Ex. A, § 3.1.)

9.    The word "infringement" nowhere appears in Section 3 of the Agreements, entitled CONSIDERATION, which includes the methodology for calculating royalty payments, as well as the definitions of Total Recoveries and Net Proceeds.  (*See* Ebert Aff., Ex. A, § 3.)

## B. The Third-Party Agreements

10.    Between December 2009 and April 2013, Acacia entered into agreements (the "Third-Party Agreements") in which it granted rights in the ETRI Patents to various corporations, including ████████████████████████████████████████ each, a "Counterparty").  (*See* Ebert Aff., Exs. B - H.)

11.    Under the Third-Party Agreements, Acacia granted each Counterparty ███████████████████████████████████████ (Ebert Aff., Ex. B, § A2.2; Ex. C, § A2.2; Ex. D, § A2.2; Ex. E, § A2.2, Ex. F, § 2.3; Ex. G, § 2.5; Ex. H, § 2.2.)

12.    In structuring the Third-Party Agreements, Acacia ███████████████████████████████████████████████████████ (Ebert Aff., Ex. B, §§ A1.2, A1.3; Ex., C, §§ A1.2, A1.3; Ex., D, §§ A1.2, A1.3; Ex. E, §§ A1.6, A1.7; Ex. F, §§ 1.2, 1.5.)

13.    Acacia granted ████████████████████████████████████████████████████████████

14.    Each of the Third-Party Agreements (except the ████████ agreement) recites that the Counterparty ███████████████████████████████████████

519427_1/03941-0002

██████████ (Ebert Aff., Ex. F, at 1; Ex. H, at 1; Ex. B, at 1; Ex. E, at 1; Ex. D, at 1; Ex. C, at 1.)

15. Each of the Third-Party Agreements (except the ████████ agreement) recites that the Counterparties ████████████████████████████ ████████████████████ (Ebert Aff., Ex. F, § 4.1; Ex. B, § 2.1; Ex. C, § 2.1; Ex. D, § 2.1; Ex. G, § 5.1; Ex. H, § 8.2.)

16. Under each Third-Party Agreement (other than those with ████████████), Acacia has the right to ██████████████████████████ ████████████████████████████████ ████████████████████ (Ebert Aff., Ex. B, § A2.2; Ex. C, § A2.2; Ex. D, § A2.2; Ex. E, § A2.2; Ex. F, § 2.4.)

17. In addition, if a Counterparty (other than ████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████ (Ebert Aff., Ex. B, § A2.2; Ex. C, § A2.2; Ex. D, § A2.2; Ex. E, § A2.2; Ex. F, § 2.4.)

18. The Third-Party Agreement between Acacia and ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

(*See* Ebert Aff., Ex. F, §§ 1.3, 1.5, 1.11, 1.14, 2.1.)

4

19.     Acacia received at least $███████ under the Third-Party Agreements for licensing its patent portfolio, including the ETRI Patents. (Ebert Aff., Ex. B, § 2.1; Ex. C, § 2.1, A1.8; Ex. D, § 2.1; Ex. E, § A4.1; Ex. F, § 4.1; Ex. G, § 5.1; Ex. H, § 8.1.)

20.     ████████████████████████████████████ ██████████████████████████ (Ebert Aff., Ex. B, § A2.2; Ex. C, § A2.2; Ex. E, § A2.2; Ex. G, § A2.5; Ex. H, § A2.2.)

## C. Grants to Korean Companies

21.     The ETRI/Acacia Agreements prohibit Acacia from licensing the ETRI Patents to, or enforcing them against, Korean companies. (Ebert Aff., Ex. A, at 1 and Ex. A.)

22.     After entering into the ETRI/Acacia Agreements, Acacia entered into agreements in which it granted two companies headquartered in the Republic of Korea, ████████████ ██████ ("███████") and ██████████ ("███████") (together, the "Korean Companies"), ████████████ in the ETRI Patents. (Ebert Aff., Exs. D and E.)

23.     Acacia has not shared with ETRI any of the fees that Acacia received under the Third-Party Agreements.

Dated: New York, New York
      May 18, 2016

                   **INGRAM YUZEK GAINEN CARROLL**
                    **& BERTOLOTTI, LLP**
                   *Attorneys for Plaintiff Electronics and*
                   *Telecommunications Research Institute*


                   By:    */s/ David G. Ebert*
                       David G. Ebert
                       Evan T. Raciti
                   250 Park Avenue, 6th Floor
                   New York, New York 10177
                   (212) 907-9600
                   debert@ingramllp.com
                   eraciti@ingramllp.com

519427_1/03941-0002