# EXHIBIT D

**To:**      조중원[jjwon@etri.re.kr]
**Cc:**      Matthew Vella[mvella@acaciares.com]
**From:**    Jonathan Taub
**Sent:**    Wed 4/14/2010 8:02:00 PM
**Importance:**      Normal
**Subject:**    RE: ETRI-APAC agreement #2 ready for signatures
**Received:**    Wed 4/14/2010 8:02:01 PM
ETRI_2-APAC_Agreement_ETRI_2010-4-12 (clean).doc
ETRI_2-APAC_Agreement_ETRI_2010-4-12 (redline).doc


Joong-Won – attached is agreement #2 ready for ETRI signature.  You'll note in the attached redline version thereof that we accepted all your edits, and added a new 4.3, which we'll need in our agreements going forward.  It doesn't impact anything here: let's discuss in our call today.



Thanks, Jon



**From:** 조중원[mailto:jjwon@etri.re.kr]
**Sent:** Wednesday, April 14, 2010 6:55 AM
**To:** Matthew Vella
**Cc:** Jonathan Taub
**Subject:** Re: ETRI-APAC agreement #2 ready for signatures



Thanks Matt,

Look forward to speaking with you tomorrow.



Sent from iPhone



2010. 4. 14. 오전 2:36 "Matthew Vella" <mvella@acaciares.com> 작성:


Dear Joong-Won, please see my inline comment below.  Best regards,  Matt.



Confidential                                                                                        ACACIA0001796

**From:** Jonathan Taub
**Sent:** Tuesday, April 13, 2010 12:22 AM
**To:** 조중원; Matthew Vella
**Cc:** 김길원
**Subject:** RE: ETRI-APAC agreement #2 ready for signatures

Hi Joong-Won:  good catch re: your 2.1 edit.  Your other edit seems fine.  I'll send you hopefully by this Tuesday end of day my time a revised clean copy for ETRI to sign.

Best, Jon

**From:** 조중원[mailto:jjwon@etri.re.kr]
**Sent:** Monday, April 12, 2010 3:35 AM
**To:** Jonathan Taub
**Cc:** 김길원
**Subject:** RE: ETRI-APAC agreement #2 ready for signatures

Hi Jonathan,

Minor changes to agreement.  I changed the patent number in section 2.1(e.g US patent number 5555326-->6081297), and deleted a null cell( 5th cell) in foreign patent & application of page 16. I think that the internal procedure will be completed by this week.

Also, I have a question for clarification. We are going to have two separate agreement. Does that mean that you will put 4 patents into a different bucket from the 49 patents of the previous agreement, and run two independent licensing program of our patents?*[Matthew Vella]*Yes, we will have at least two separate buckets.  Moreover, we will probably have 4 separate buckets since I am thinking of splitting the first 49 patents into three buckets.  We can discuss this further during our call tomorrow.

Confidential

ACACIA0001797

Best Regards,

=======================================================

Joong-Won Cho

Patent Counsel

Intellectual Property Management Team

Electronics and Telecommunications Research Institute(ETRI)

161 Gajeong-dong, Yuseong-gu, Daejeon, 305-350, KOREA

Tel : +82 42 860 0757, Mobile : +82 10 2737 8310, Fax : +82 42 860 3831

=======================================================

-----원본메시지-----
**From:** "Jonathan Taub" <jtaub@acaciares.com>
**From Date:** 2010-04-03 오전12:54:40
**To:**조중원<jjwon@etri.re.kr>
**Cc:**김길원<kwkim@etri.re.kr>
**Subject:** RE: ETRI-APAC agreement #2 ready for signatures

Thanks Joong-Won: we accepted all your changes and attached is the clean copy for you all to sign. Please print out, have signed and scan/email to me attached when your internal procedure you mention is complete: I'll then FedEx you hardcopies to have signed.

Best, Jon

---

**From:**조중원[mailto:jjwon@etri.re.kr]
**Sent:** Thursday, April 01, 2010 9:39 PM
**To:** Jonathan Taub
**Cc:**김길원

ACACIA0001798

Dear Jonathan,

Please see the attached. I corrected patent list in Exhibit B. Besides this, we have no other comment regarding the agreement. We are expecting that all internal procedure will be finished in the middle of this month. I will inform you when we are finally ready for signing up the agreement.

Best Regards,

======================================================

Joong-Won Cho

Patent Counsel

Intellectual Property Management Team

Electronics and Telecommunications Research Institute(ETRI)

161 Gajeong-dong, Yuseong-gu, Daejeon, 305-350, KOREA

Tel : +82 42 860 0757, Mobile : +82 10 2737 8310, Fax : +82 42 860 3831

======================================================

-----원본메시지-----
**From:** "Jonathan Taub" <jtaub@acaciares.com>
**From Date:** 2010-03-16오전9:40:24
**To:**조중원<jjwon@etri.re.kr>
**Cc:**김길원<kwkim@etri.re.kr>
**Subject:** ETRI-APAC agreement #2 ready for signatures

Joong-Won:  attached is our agreement #2 ready for ETRI signature:  we used our agreement #1, and made the few tweaks below (indicated in redline/attachment #1).  Please confirm everything looks OK here, and then ? like last time ? print out and sign two copies of attached clean copy (attachment #2), scan/email one of those to me for our immediate countersignature, and FedEx the originals to us for countersignature.  We'll then be in touch re: next steps.

Confidential

1. **Patents:**  (listed in Exhibit B) are those below.  All of these are owned outright by ETRI, so we eliminated from our prior agreement references to jointly owned patents:

| | | |
|---|---|---|
| US | 6081297 | MPEG-2 encoder pre-processor for processing SDTV video and HDTV split picture video |
| US | 6330527 | Apparatus and method for modeling frameworks via use of object-oriented analysis information |
| US | 6707851 | Method for objects segmentation in video sequences by object tracking and user assistanc |
| US | 7139927 | Journaling and recovery method of shared disk file system |

2. **Investigation Period:**  30 days, not 60 days

3. **Signatures:**  for ETRI, we left the title as is but left the name blank (we assume Mr. Kim will sign, but you should confirm); for us to be determined which of our management signs

4. **Exhibit C ("Existing Agreements")**:  we took out the ▮▮▮▮▮▮▮ per your email below.

Thanks, Jon

---

**From:** Jonathan Taub
**Sent:** Wednesday, March 10, 2010 8:19 PM
**To:** 조중원
**Cc:** Marc Booth;김길원

Confidential

**Subject:** RE: existing agreements re: additional ETRI patents (for our agreement #2) ?

Case 1:15-cv-03419-VSB-BCM    Document 69-4    Filed 07/06/16    Page 7 of 43

OK. Thanks!

---

**From:** 조중원[mailto:jjwon@etri.re.kr]
**Sent:** Wednesday, March 10, 2010 8:15 PM
**To:** Jonathan Taub
**Cc:** Marc Booth;김길원
**Subject:** RE: existing agreements re: additional ETRI patents (for our agreement #2) ?
**Importance:** High

Jonathan,

███████████████████████████

Thank you.

Best Regards,

========================================================

Joong-Won Cho

Patent Counsel

Intellectual Property Management Team

Electronics and Telecommunications Research Institute(ETRI)

161 Gajeong-dong, Yuseong-gu, Daejeon, 305-350, KOREA

Tel : +82 42 860 0757, Mobile : +82 10 2737 8310, Fax : +82 42 860 3831

Confidential

-----원본메시지-----
**From:** "Jonathan Taub" <jtaub@acaciares.com>
**From Date:** 2010-03-11 오후 12:58:13
**To:** 조중원 <jjwon@etri.re.kr>
**Cc:** "Marc Booth" <mbooth@acaciares.com>
**Subject:** existing agreements re: additional ETRI patents (for our agreement #2) ?


Joong-Won:  as we prepare our agreement #2 (based on our agreement #1) for the additional ETRI patents below, can you please clarify which of the "Existing Agreements", if any, listed in Exhibit C of agreement #1 apply to these additional patents?  Presumably the ███████████████████ does not apply, correct?  What about ████████████████████


Thanks, Jon


| | | |
|---|---|---|
| US | 6081297 | MPEG-2 encoder pre-processor for processing SDTV video and HDTV split picture video |
| US | 6330527 | Apparatus and method for modeling frameworks via use of object-oriented analysis information |
| US | 6707851 | Method for objects segmentation in video sequences by object tracking and user assistanc |
| US | 7139927 | Journaling and recovery method of shared disk file system |


<image001.png>


<image002.jpg>


Confidential                                                                    ACACIA0001802

Confidential

ACACIA0001803

## EXCLUSIVE LICENSE AGREEMENT

**This Exclusive License Agreement (the "Agreement")** is entered into by and between **ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE** ("Licensor"), a research institute organized under the laws of Korea, having a principal place of business at 161 Gajeong-dong, Yuseong-gu, Daejeon, 305-350, KOREA, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

## BACKGROUND

**WHEREAS**, Licensor is the sole and exclusive owner of the **U.S. Patents listed in Exhibit B attached hereto** and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations–in–part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof (collectively referred to as the "Patents"); and

**WHEREAS**,  and

**WHEREAS**, the Patents are subject to the existing license agreements set forth in Exhibit C (the "Existing Agreements"); and

**WHEREAS**, Licensor is willing to grant worldwide exclusive license rights in the Patents to APAC and APAC in turn, desires to acquire all substantial rights in and to the Patents.

**NOW, THEREFORE,** in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, Licensor and APAC agree as follows:

1. **GRANT**

   1.1.   Exclusive License. Effective immediately upon the date of Acceptable Completion as set forth in Section 1.3 below, Licensor grants to APAC all substantial rights in and to the Patents including the worldwide, exclusive right and license under the Patents to make, have made, use, import, offer or sell products or services covered by the Patents, including the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the Patents. Except as expressly set forth in this Agreement, Licensor retains no rights in or to the Patents, including without limitation, the right to sue for and collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the Patents and specifically grants APAC all such rights for the term as set forth in Section 7 below.

   1.2.   Investigation Period. Licensor acknowledges and agrees that APAC shall undertake and perform a due diligence investigation of the Patents during the period of up to thirty (30) days following the Effective Date (the "Investigation Period"). In consideration of APAC's due diligence investigation of the Patents, Licensor agrees that, during the Investigation Period, Licensor shall not discuss, negotiate or pursue with any third parties any offers or proposals with respect to or otherwise relating to any of the Patents.

Confidential                                                                                    ACACIA0001804

Licensor agrees to cooperate with APAC and to promptly provide to APAC all information in Licensor's possession or control regarding the Patents, including, but not limited to, a copy of the complete prosecution history of each of the Patents (each a "File History") and copies of all files, information and documents relating to the Patents to the extent that the copies are reasonably available and not confidential under applicable law or Licensor's internal regulations. In the event that any of the File Histories or any of the files, information and documents relating to the Patents are not delivered to APAC within the seven (7) day period following the Effective Date, the Investigation Period shall be extended by the greater of the number of days for which the last of the File Histories or any files, information and documents relating to the Patents is delayed, or as mutually agreed by the Parties. On or before the completion of the Investigation Period, APAC shall provide written notice to Licensor of its conclusion regarding the investigation of the Patents. The Investigation Period will commence on the Effective Date and conclude on the earlier of: (i) automatically at 11:59 P.M. Pacific Time, thirty (30) calendar days following, but not including, the Effective Date, subject to the extensions set forth in this Section 1.2, provided that, if the Investigation Period ends on a Saturday, Sunday, or a U.S. Federal holiday, such Investigation Period shall conclude on the next business day; or (ii) such time within the Investigation Period as APAC transmits written notice to Licensor of its conclusion regarding the investigation of the Patents.  Any costs incurred in relation to the due diligence investigation of the Patents, including but not limited to attorneys' costs, the fees and costs of consultants, expert or technical advisors, and patent attorneys review costs, incurred by APAC during the Investigation Period shall be solely borne by APAC and shall not be considered as APAC Costs.

1.3.    Due Diligence Completion. If APAC determines, in its sole and absolute discretion, that any or all of the Patents are acceptable and transmits written notice to Licensor by the end of the Investigation Period that any or all of the Patents are acceptable ("Acceptable Completion"), then this Agreement as it relates to any Patents that are deemed acceptable (the "Accepted Patents"), shall continue with full force and effect following such Acceptable Completion of the Investigation Period. Otherwise, if APAC determines, in its sole and absolute discretion, that any or all of the Patents are not acceptable (the "Non-Elected Patents"), then (i) APAC shall have no payment obligations or liability to Licensor with respect to those Non-Elected Patents, except for the obligations to bear the costs APAC incurs during the Investigation Period under Section 1.2; and (ii) such Non-Elected Patents will be removed from this Agreement and the rights and obligations as to those Non-Elected Patents shall terminate and the Agreement shall only apply to the remaining Accepted Patents. Furthermore, if APAC determines, in its sole and absolute discretion, that all of the Patents are not acceptable, then (i) APAC shall have no payment obligations or liability to Licensor hereunder; and (ii) this Agreement shall automatically terminate upon completion of the Investigation Period. For the purposes of this Section 1.3, written notice of Acceptable Completion (or mutual extension of the Investigation Period) may be sent by first class mail, facsimile, recorded delivery or electronic mail.

1.4.    Obligations of Licensor during the Investigation Period. Notwithstanding anything to the contrary in this Agreement, during the Investigation Period, Licensor will (i) pay all maintenance fees for the U.S. Patents on or before their due dates at the appropriate small or large entity fee rate; (ii) pay all foreign maintenance fees with respect to the Patents on or before their due dates; (iii) continue the prosecution of any and all activities, matters and proceedings before the United States Patent and Trademark Office (the "USPTO") and foreign patent offices relating to the Patents, including without limitation any

Confidential                                                                              ACACIA0001805

reissues or reexaminations of any issued United States patent and the prosecution and the continuing prosecution of any pending United States or foreign patent applications among the Patents; and (iv) not engage in any activity that may affect the accuracy or completeness of Licensor's representations and warranties in <u>Section 4.1</u> below. Any costs, fees and expenses related to such maintenance, prosecution of the Patents and fees for Licensor's attorney incurred in the negotiation of this Agreement or consulting support provided by Licensor to APAC during the Investigation Period will be borne by Licensor.

1.5.    <u>Exclusivity to APAC</u>. Subject to the limitations set forth in <u>Exhibit A</u> with respect to "Excluded Parties" and the limitations set forth in <u>Exhibit C</u> with respect to "Existing Agreements", the grant to APAC of the exclusive right and license under the Patents herein shall be exclusive with respect to any and all Exclusive Parties (as defined below) and APAC shall have the sole and exclusive right under the Patents to deal with one or more Exclusive Parties in any and all matters relating to the Patents, including without limitation any and all direct and indirect offers for sale and sales of products and services, in whole or in part, covered by the Patents to such Exclusive Parties. The term "Exclusive Party" shall mean:

(a)    a declaratory judgment plaintiff or an infringement defendant under any of the Patents; or

(b)    a party infringing any claim from any of the Patents; or

(c)    a party with which APAC has initiated or undertaken licensing communications, discussions and/or negotiations or otherwise asserted any of the Patents against, provided that an Exclusive Party shall be deemed to include any and all of its affiliates.

## 2.  **LICENSE BACK**

2.1.    <u>Grant Back License</u>. Subject to Acceptable Completion and Licensor marking each of its products in a conspicuous manner so as to identify each of the applicable Patents embodied in such products (e.g., U.S. Patent No. 6,081,297), APAC shall grant to Licensor a limited, non-exclusive, non-transferable (except as provided for in <u>Section 2.2</u> below), royalty-free right and license under the Patents to make, use, offer or sell Licensor's products or services (the "<u>License</u>"). Other than as detailed herein this <u>Section 2.1</u> with respect to the License, no other rights or licenses under the Patents are granted.

2.2.    <u>License Transferability</u>. The License granted under the Patents may be transferred to a third party (a "Transfer") that is not an Exclusive Party (as defined above in <u>Section 1.5</u>) and is either (i) the purchaser of all or substantially all of the operating assets of Licensor, or (ii) the successor of Licensor in connection with a merger involving the sale of all, or substantially all, of the outstanding capital stock of Licensor (each of (i) and (ii) a "Permitted Transferee"). The Permitted Transferee will assume all the rights and responsibilities of Licensor under the License. Licensor shall provide APAC with thirty (30) days prior written notice of such proposed Transfer. Except in the case of a Permitted Transferee as provided above, the License granted under the Patents is non-transferable and the Licensor acknowledges and agrees that the Licensor shall not cause or permit an Exclusive Party to claim ownership or entitlement to any License or

Confidential                                                                    ACACIA0001806

otherwise obtain or be deemed to obtain, directly or indirectly, any rights, benefits, licenses or immunities, in whole or in part, under any License, whether by, through, as a result of, or otherwise in connection with any agreement, contract, transaction or business combination with Licensor.

## 3.  CONSIDERATION

3.1.  Royalty Payments. In consideration of the rights assigned to APAC hereunder, Licensor's share of the Net Proceeds (as defined below) shall be equal to fifty percent (50%) of Net Proceeds. APAC's share of the Net Proceeds shall be equal to fifty percent (50%) of Net Proceeds. For purposes hereof, the following terms shall have the following meanings:

"Net Proceeds" shall mean Total Recoveries less the APAC Costs.

"Total Recoveries" shall mean all amounts actually received by APAC from the licensing and enforcement of the Accepted Patents including all licensing proceeds and recoveries from any lawsuits or settlements.

"APAC Costs" shall mean all costs and expenses incurred with third parties by APAC in connection with prosecuting, maintaining, licensing, enforcing or defending the Accepted Patents, including, without limitation:

(a)  attorneys' and paralegal fees (whether on an hourly or contingent basis and whether for general or local counsel), costs and disbursements;

(b)  the fees and costs of consultants, experts or technical advisors;

(c)  travel and lodging expenses

(d)  duplicating, secretarial, stenographer, postage, courier and similar expenses;

(e)  filing fees and other Patent Office fees or costs;

(f)  court costs;

(g)  legal and other costs related to any re-examination or reissue proceeding;

(h)  legal and other costs incurred in defending any action or counterclaim in respect of the Accepted Patents;

(i)  legal and other costs in prosecuting or processing any U.S. or foreign application, including without limitation, any continuing application or continuation in part application;  and

(j)  maintenance fees under Section 5.3;

3.2.  Application of Total Recoveries. Total Recoveries shall be applied in the following order of priority: first to APAC in an amount equal to the APAC Costs, then to APAC and Licensor in proportion to their respective shares of the Net Proceeds. All Taxes (as defined below) shall be the financial responsibility of the Party obligated to pay such Taxes as determined by the applicable law and neither Party is or shall be liable at any

Confidential                                                                            ACACIA0001807

time for any of the other Party's Taxes incurred in connection with or related to amounts paid under this Agreement. The term "Taxes" shall mean any federal, state, local, municipal or other governmental taxes, duties, levies, fees, excises or tariffs, arising as a result of or in connection with any amounts paid under this Agreement, including without limitation:

(a)   any state or local sales or use taxes;

(b)   any import, value added or consumption tax;

(c)   any business transfer tax;

(d)   any taxes imposed or based on or with respect to or measured by any net or gross income or receipts of either Party;

(e)   any franchise taxes, taxes on doing business, gross receipts taxes or capital stock taxes; or

(f)   any other tax now or hereafter imposed by any governmental or taxing authority on any aspect of this Agreement and the obligations hereunder.

If Taxes are required to be withheld on any amounts otherwise to be paid by one Party to the other, the paying Party shall deduct and set off such Taxes from the amount otherwise due and owed to the receiving Party and pay them to the appropriate taxing authority.

3.3.   <u>Reporting/Payments</u>. All amounts payable to Licensor with respect to Net Proceeds, if any, shall be due within thirty (30) calendar days after the end of each calendar quarter (*i.e.* the 31st March, the 30th June, the 30th September and the 31st December of each year). Within thirty (30) calendar days after the end of each quarter that APAC Costs are incurred or Total Recoveries are received, APAC will provide Licensor with a report of Total Recoveries, APAC Costs and Net Proceeds, if any, for such calendar quarter. Licensor shall have the right to audit such reports in accordance with <u>Section 5.2</u> below. All other payments from one Party to the other hereunder shall be due and payable within thirty (30) days following receipt of the applicable invoice.

3.4.   <u>Licensor Availability</u>. Licensor will be available when necessary to assist and consult with APAC or its attorneys on matters relating to the Patents. If any pending applications of the Patents exist, at the request and cost of APAC, the Licensor shall execute all documents including, but not limited to, powers of attorney and perform all acts as may be necessary to enable APAC to control prosecution of such applications. In the event that the testimony of any employee, director, officer, consultant or agent of Licensor is taken in any action relating to the Patents, APAC's attorneys will represent such party without additional charge, and Licensor and such party will cooperate with APAC and its attorneys in preparing for such testimony. APAC will pay for Licensor's actual out of pocket travel expenses incurred at the request of APAC and any such expenses will be treated as an APAC Cost.

## 4.   <u>REPRESENTATIONS AND WARRANTIES</u>

4.1.   <u>Licensor's Representations and Warranties</u>. Licensor represents and warrants to APAC that, as of the Effective Date hereof:

Confidential                                                                 ACACIA0001808

4.1.1.   Licensor is the sole owner of the Patents as listed in <u>Exhibit B</u> and has all right, title, claims, interest and privileges arising from such ownership, free and clear of any liens, security interests, encumbrances, rights or restrictions;

4.1.2.   the identity of all inventors of the inventions described in the Patents has been fully disclosed to the U.S. Patent Office as required by U.S. law;

4.1.3.   the Patents (i) are not the product or subject of any joint development activity or agreement with any third party; (ii) are not the subject of any consortia agreement; and (iii) have not been financed in whole or in part by any third party;

4.1.4.   the Patents remain in full force and effect as of the Effective Date of this Agreement;

4.1.5.   except for the Existing Agreements set forth in <u>Exhibit C</u>, Licensor has not assigned, licensed or cross-licensed, granted covenants not to sue, transferred or otherwise conveyed to any other person or entity other than the parties listed in <u>Exhibit A</u> any of its rights, title, claims, interest or privileges with respect to the Patents.

4.1.6.   the licenses granted under the Existing Agreements set forth in <u>Exhibit C</u> are non-exclusive licenses and Licensor has not granted any rights to sublicense such license rights;

4.1.7.   <u>Exhibit B</u> includes all patents and patent applications worldwide, including all continuations, continuations-in-part, divisionals, extensions, renewals, reissues and re-examinations related to the Patents, and if any related patents, patent applications, foreign counterparts, continuations, continuations-in-part, divisionals, extensions, renewals, reissues, re-examinations, or any issued patents which are subject to a Terminal Disclaimer under 37 C.F.R. §1.321 are omitted, the Parties agree that they shall be automatically included in such exhibit;

4.1.8.   all maintenance fees that have become due before the Effective Date have been paid in full (i) for U.S. Patents at the appropriate small or large entity fee rate; and (ii) for foreign Patents;

4.1.9.   all prosecution fees related to the Patents that have become due before the Effective Date have been paid in full;

4.1.10. the Patents are not and have not been subject to any action or proceeding concerning their validity, enforceability, inventorship or ownership;

4.1.11. other than the facts included in the File Histories, files, information and documents provided by Licensor to APAC under <u>Section 1.2</u> above, Licensor has no knowledge of any facts that could give rise to a claim that the Patents are invalid or unenforceable; and Licensor has not engaged in any conduct, or omitted to perform any necessary act, the result of which would invalidate the Patents or preclude their enforceability;

Confidential                                                                ACACIA0001809

4.1.12.  Licensor has all requisite legal and corporate power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to carry out and perform its obligations under the terms of this Agreement; and

4.1.13.  the execution, delivery, performance of and compliance with this Agreement has not resulted and will not result in any violation of, or conflict with, or constitute a default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under any agreement to which Licensor is a party.

4.2.  <u>APAC's Representations and Warranties</u>. APAC represents and warrants to Licensor that, as of the Effective Date hereof:

4.2.1.  APAC is a company duly organized and in good standing under the laws of Delaware;

4.2.2.  APAC has authority to enter into this Agreement and implement its terms; and

4.2.3.  the person executing this Agreement on behalf of APAC is duly authorized to do so.

4.3.  <u>Third Party Agreement</u>. Licensor acknowledges that because of a preexisting agreement with one or more third parties including its Related Entities ("Third Party Licensee"), upon Acceptable Completion, such Third Party Licensee will obtain or will be granted, either a license and/or a covenant not to sue under the Patents. For the purposes of this Section 4.3, the term "Related Entities" shall mean any entity, including parent companies and majority owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by such Third Party Licensee, is under common control with such Third Party Licensee, or an entity that controls such Third Party Licensee, as well as all predecessors or successors of such entities.

## 5.  <u>RECORDS AND FEES</u>

5.1.  <u>Records</u>. APAC shall keep complete and proper records of the Total Recoveries, APAC Costs, and Net Proceeds.

5.2.  <u>Audit</u>. Licensor shall have the right, during reasonable business hours, but no more than once per calendar year, to audit, at Licensor's expense, the correctness of any previously unaudited report by an independent public accountant chosen by Licensor who may examine APAC's records pertinent to this Agreement. To the extent that the Licensor's auditor discovers any errors that resulted in an underpayment of Licensor's respective share of Net Proceeds in an amount greater than ten percent (10%) of the actual amounts due to Licensor following correction of such errors and provided that APAC's own auditors confirm any such errors discovered by the Licensor's auditor that resulted in such underpayments to Licensor, APAC shall (i) promptly pay to Licensor the amounts of such confirmed underpayment; (ii) pay the reasonable and customary fees and costs for such audit by the Licensor's auditor; (iii) and pay one percent (1%) interest per month on the underpayment, which accrues from the date of the underpayment. Licensor and its representatives shall hold in confidence any such information and shall not use the information for any purposes other than verifying APAC's reporting in connection with this Agreement.

Confidential                                                                                              ACACIA0001810

5.3.     Maintenance Fees. Subject to Acceptable Completion as set forth in Section 1.3, and for so long as this Agreement is in effect, APAC shall pay all U.S. and foreign maintenance fees with respect to the Accepted Patents on or before their due dates, at the applicable rate. Such payment shall be considered as an APAC Cost. APAC will have sole and absolute discretion in maintaining the Accepted Patents, provided that APAC will provide Licensor with sixty (60) day advance written notice of its determination not to maintain one or more of the Accepted Patents, in which event, Licensor may assume, at Licensor's option, thereafter the right to pay the maintenance fees for such abandoned patents (the "Abandoned Patents"). APAC and Licensor agree that such Abandoned Patents shall be removed from Exhibit B and this Agreement unless there is at least one related U.S. patent, foreign patent or patent application to the Abandoned Patents that APAC continues to pay maintenance fees and therefore, are not Abandoned Patents, in which event, such Abandoned Patents shall not be removed from the Agreement and APAC shall continue its enforcement efforts including paying maintenance fees with respect to such Abandoned Patents.

5.4.     Patent Prosecution. Subsequent to Acceptable Completion, during the term of the Agreement, APAC shall assume sole control of any and all activities, matters and proceedings before the United States Patent and Trademark Office (the "USPTO") and foreign patent offices relating to the Accepted Patents, including without limitation any reissues or re-examinations of any issued United States patent, the prosecution of any United States or foreign patent applications and the continuing prosecution of any pending United States or foreign patent applications among the Accepted Patents and the costs, fees and expenses paid by APAC in connection therewith shall be treated as APAC Costs. APAC will have sole and absolute discretion in filing, prosecuting and/or abandoning any patent applications. Licensor hereby grants APAC a power of attorney permitting APAC to assume such sole control of any and all activities, matters and proceedings before the USPTO and foreign patent offices relating to the Accepted Patents and Licensor shall fully cooperate with APAC, including without limitation the execution of such documents as APAC shall reasonably require, to timely address and prosecute all such activities, matters and proceedings before the USPTO and foreign patent offices. However, APAC agrees that prior to abandoning or forfeiting any right or proceeding related to the prosecution of the Accepted Patents, APAC shall provide sixty (60) day notice to Licensor of such impending abandonment or forfeiture and shall give Licensor the opportunity to assume, at Licensor's option, the right to conduct the prosecution with respect to such abandoned patent application (the "Abandoned Application). APAC and Licensor agree that any Patent that is the subject of such Abandoned Application shall be removed from Exhibit B and this Agreement unless there is at least one U.S. patent, foreign patent or patent application related to such Patent that APAC continues to enforce, in which event, such Patent that is the subject of the Abandoned Application shall not be removed from the Agreement and APAC shall continue its enforcement efforts including paying related costs, fees or expenses with respect to such Patents.

## 6.  ENFORCEMENT OF PATENT RIGHTS AND COOPERATION

6.1.  Good Faith. Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Accepted Patents at its expense. Subject to the limitations with respect to Excluded Parties and Existing Agreements as set forth in Exhibit A

Confidential                                                                 ACACIA0001811

and Exhibit C attached hereto, APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Accepted Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Accepted Patents if APAC determines, in its sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal. In the event APAC elects to not pursue licensing or enforcement of one or more of the Accepted Patents, then (i) APAC will notify Licensor in writing regarding any such rejected Patents (the "Rejected Patents"); (ii) such Rejected Patents will be removed from this Agreement by formal amendment; and (iii) APAC's rights and obligations with respect to the Rejected Patents shall terminate and the Agreement shall only apply to the remaining Patents. APAC shall fully cooperate with Licensor to effectuate the transfer of the rights to such Rejected Patents to the Licensor, including the execution of any reasonably required documents.

6.2.   Enforcement Litigation. Subject to the limitations with respect to Excluded Parties and Existing Agreements as set forth in Exhibit A and Exhibit C attached hereto, APAC may, in its sole judgment, decide to institute enforcement actions against any or all of the companies that APAC believes are infringing the Accepted Patents. APAC shall have the exclusive right to bring suit to enforce the Accepted Patents. Notwithstanding anything to the contrary in Section 1.5 of the Agreement, APAC agrees not to proactively license the Accepted Patents to or initiate an enforcement action with respect to any of the Accepted Patents against the Excluded Parties set forth in Exhibit A and Existing Agreements set forth in Exhibit C attached hereto. Licensor shall join as a plaintiff at APAC's request in the event APAC's counsel determines that Licensor is a necessary party to the action. Licensor hereby grants APAC a power of attorney allowing APAC (i) to add Licensor as a party to any such enforcement action related to the Patents; (ii) to bring an enforcement action related to the Patents directly in Licensor's name; and (iii) to settle any claims relating to the Patents on behalf of Licensor. Regardless of whether Licensor is named as a party to any enforcement action, APAC reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition of such action. In the event Licensor joins as a plaintiff to an enforcement action related to the Patents at APAC's request, APAC brings an enforcement action related to the Patents in Licensor's name, or Licensor is named as a party by another party to such enforcement action related to the Patents, APAC shall defend and indemnify Licensor against all liabilities, costs and expenses arising from such enforcement action related to the Patents, except that, as provided below, Licensor shall be responsible for its own counsel's fees and costs if it elects to retain separate counsel. Notwithstanding any of the foregoing, in the event that a court holds that Licensor has engaged in fraud, gross negligence, or willful misconduct, APAC shall have no obligation to indemnify Licensor for any judgments, liability, loss, damages, costs and expenses (including attorneys' fees and expenses of litigation) in connection therewith.

6.3.   Choice of Counsel. In the event that Licensor joins in any suit, either before or after it is initiated, Licensor shall have the right to be represented by counsel of its choice, provided that if Licensor chooses to have representation separate from APAC, Licensor shall be responsible for paying all its own fees and costs related to such representation and APAC shall be solely responsible for the fees and costs incurred by its own counsel.

6.4.   Cooperation. The Parties agree to fully cooperate with each other in any litigation that is brought and any other matters in connection with licensing, enforcing or defending the Patents.

Confidential                                                                        ACACIA0001812

7. **TERMINATION**

7.1. <u>Term</u>. Unless earlier terminated as provided for in this Agreement, all grants, obligations and provisions recited in this Agreement and relating to the Patents shall continue in full force and effect until the conclusion of APAC's pursuit of licensing and enforcement efforts related to the Patents.

7.2. <u>APAC Bankruptcy</u>. Licensor may terminate this Agreement in the event that APAC files for bankruptcy protection under any state or federal bankruptcy law or a petition for bankruptcy is filed against APAC and not dismissed within ninety (90) days.

7.3. <u>Material Breach</u>. Either Party may terminate this Agreement upon written notice to the other if the other Party breaches any material representation, warranty or agreement in this Agreement and fails to cure such breach within ninety (90) days of receipt of such written notice detailing the alleged breach.

7.4. <u>Commercially Unreasonable</u>. APAC may terminate this Agreement with three (3) month prior notice to Licensor, if APAC determines, in its sole judgment, that licensing or enforcement of the Patents is not commercially reasonable or practicable.

7.5. <u>Termination After Three Years</u>. In the event of Acceptable Completion, Licensor may terminate this Agreement within the ninety (90) day period beginning three (3) years from the date of Acceptable Completion (such ninety (90) day period referred to as the "Termination Period") unless APAC has either (i) filed any action or counterclaim for infringement of any of the Patents, or (ii) generated any Total Recoveries from licensing or enforcement of the Accepted Patents during the three(3) year period (the failure of (i) and (ii) above shall be referred to as a "Termination Event"). In order to terminate this Agreement pursuant to this <u>Section 7.5</u>, within the Termination Period, Licensor shall provide APAC with written notice of its intention to exercise its right to terminate this Agreement under this <u>Section 7.5</u>, at which time APAC shall have a ninety (90) day period from the time it receives such notice, in which it may cure the Termination Event giving rise to the right of termination (the "Cure Period") by either (i) filing an action (or counterclaim) to enforce any of the Accepted Patents or (ii) generating Total Recoveries and paying Licensor its share of the Net Proceeds, if any. If Licensor does not give APAC notice of its intention to terminate within the Termination Period or APAC cures the Termination Event during the Cure Period, then Licensor's right to terminate this Agreement under this <u>Section 7.5</u> shall lapse.

7.6. <u>Termination After Eight Years</u>. Licensor may terminate this Agreement if no Total Recoveries have been generated in the five (5) year period from the earlier of (i) the end of the Termination Period under <u>Section 7.5</u>; or (ii) the time when APAC cures the First Termination Event during the Cure Period under <u>Section 7.5</u>. In order to terminate this Agreement pursuant to this <u>Section 7.6</u>, Licensor shall provide APAC with written notice of its intention to exercise its right to terminate this Agreement under this <u>Section 7.6</u>.

7.7. <u>Final Decision</u>. In the event of any dispute as to whether a Party has breached this Agreement pursuant to <u>Section 7.3</u> above or whether a cure has been effected, the matter shall be resolved according to <u>Section 9</u> hereof, and there shall be no termination of the license under this Agreement unless and until there is a final decision that there has been an uncured breach, as provided herein.

Confidential                                                                                                          ACACIA0001813

7.8.  Licensor Payments after Termination. Any termination of this Agreement shall not relieve APAC of liability for any payments due to Licensor accrued prior to the effective date of such termination.

7.9.  APAC Payments after Termination. In the event of any termination of this Agreement, regardless of the cause, after payment of any monies due Licensor, APAC shall be entitled to retain or receive the portion of Total Recoveries (that is, APAC's share of the Net Proceeds) that it would be entitled to retain or receive if this Agreement were in effect, which (i) accrued or was received prior to the termination date, (ii) accrues or is received after the termination date as a result of any settlement, license agreement or other agreement or transaction that was negotiated, made or occurred prior to the termination date, or (iii) resulted from any lawsuit or negotiations that were pending at or prior to the occurrence of such termination.

7.10.  Licensor Bankruptcy. The Parties acknowledge and agree that this Agreement is a contract under which APAC is a licensee of intellectual property as provided in Section 365(n) of title 11, United States Code (the "Bankruptcy Code"). Licensor acknowledges that if Licensor, as a debtor in possession or a trustee in bankruptcy in a case under the Bankruptcy Code (the "Bankruptcy Trustee"), rejects this Agreement, APAC may elect to retain all of its rights under this Agreement as provided in Section 365(n) of the Bankruptcy Code. Upon written request of APAC to Licensor or the Bankruptcy Trustee, Licensor will not interfere with any of the rights of APAC as provided in this Agreement.

## 8.  ASSIGNMENT

8.1.  Assignment/Successors. Licensor may transfer or assign its interest in this Agreement (as distinguished from the transferability of the License as set forth in Section 2.2 above) provided that the transferee or assignee (i) is not an Exclusive Party as defined in Section 1.5 above; and (ii) agrees to be bound by the terms of this Agreement in writing. APAC may transfer or assign its interest in this Agreement to an affiliate of APAC provided that such affiliate agrees to be bound by all the terms and conditions of this Agreement in writing, including the obligation to make payments hereunder. This Agreement shall inure to the benefit of, and be binding upon the respective successors, assigns, heirs, beneficiaries and personal representatives of Licensor and APAC. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

## 9.   GOVERNING LAW AND CONSENT TO JURISDICTION

9.1.  Choice of Laws. This Agreement shall be governed by and construed under applicable laws of the State of New York, excluding any conflict of law provisions.

9.2.  Venue/Jurisdiction. The Parties hereby irrevocably and unconditionally (a) submit to the exclusive jurisdiction of the state and federal courts in New York, over any action, suit, claim or proceeding arising out of or relating to this Agreement, (b) waive any objection to the laying of venue of any such action, suit, claim or proceeding brought in such New York courts and any claim that any such action, suit, claim or proceeding brought in such

Confidential                                                                        ACACIA0001814

New York courts has been brought in an inconvenient forum, and (c) agree that final judgment in any such action, suit, claim or proceeding in such New York courts shall be conclusive and binding upon the Parties and may be enforced in any other courts to whose jurisdiction the Party against whom enforcement is sought may be subject, by suit upon such judgment. To the extent permitted by law, the Parties hereby irrevocably waive trial by jury.

9.3.  <u>Consequential Liability</u>. Neither APAC nor Licensor shall be liable for any consequence or damage arising out of or resulting from the manufacture, use or sale of products under the Patents. In no event shall either Party be entitled to special, indirect, consequential damages, including lost profits, or punitive damages for breach of this Agreement.

## 10. CONFIDENTIALITY

10.1.  Except for the existence of this Agreement, all information provided pursuant to this Agreement, including without limitation, the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). For the avoidance of doubt, even if the Patents are not acceptable under <u>Section 1.3</u>, all information [other than information described in (a), (b) or (c) below] provided under <u>Section 1.2</u> shall be regarded as Confidential Information. The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein. Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required by applicable laws to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Either Party may disclose Confidential Information to its financial advisors, partners, consultants and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Confidential Information shall not include information that:

(a)  was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b)  has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or

(c)  was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

10.2.  <u>Preservation of Privilege</u>. The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to

Confidential                                                                                   ACACIA0001815

such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this <u>Section 10.2</u> shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand.

## 11. <u>MISCELLANEOUS</u>

11.1.  <u>Notice</u>. Except as allowed in <u>Section 1.3</u> herein with respect to written notification of Acceptable Completion, all notices or communications which either Party may desire, or be required, to give or make to the other shall be in writing and shall be deemed to have been duly given or made if and when forwarded by registered mail, certified mail, or recognized overnight courier to the address set forth below or to such other address as a Party shall give to the other in writing delivered at the last address specified in the manner prescribed by this Agreement.

To APAC:
**ACACIA PATENT ACQUISITION LLC**
500 Newport Center Drive
7th Floor
Newport Beach, CA 92660
Phone: (949) 480-8300
Fax: (949) 480-8379

To Licensor:
**ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE**
161 Gajeong-dong,
Yuseong-gu, Daejeon, 305-350, KOREA
Phone: 82 42 860 0757
Fax: 82 42 860 3831

If no confirmation of receipt is available or such notice is refused, the Parties agree that for the purposes herein, notice shall be deemed to have been duly given or made three (3) business days after forwarding such notice to the other Party.

11.2.  <u>No Waiver</u>. The failure to act upon any default hereunder shall not be deemed to constitute a waiver of such default.

11.3.  <u>Provision Invalidity</u>. If for any reason in any jurisdiction in which any provision of this Agreement is sought to be enforced, any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect, such holding shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein.

11.4.  <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed or e-mailed copy of a signature page shall be considered an original for purposes of this Agreement.

Confidential                                                                 ACACIA0001816

11.5. <u>Headings</u>. The headings contained in this Agreement have been inserted for convenient reference only and shall not modify, define, expand or limit any of the provisions of this Agreement.

(*Signatures on Next Page*)

11.6. <u>Entire Agreement</u>. This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth below.

| **ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE** | **ACACIA PATENT ACQUISITION LLC** |
|---|---|
| By:_____ | By:_____ |
| Print Name: _____ | Print Name:_____ |
| Title: _____ | Title:_____ |
| Date:_____ | Date:_____ |

Confidential

**EXHIBIT A**



Confidential                                                                      ACACIA0001818

**EXHIBIT B**

█████████████████████████

| | | | | |
|---|---|---|---|---|
| ██ | ██ | ██ | ████ | ██ |
| ████ | ████ | ████ | ████ | ████████████████████ ████████████ |
| ████ | ████ | ████ | ████ | ████████████████████ ██████████ |
| ████ | ████ | ████ | ████ | ████████████████████ ██████████ |
| | ████ | ████ | █ | ████████████████ |
| ████ | ████ | ████ | ████ | ████████████████████ ███████ |

███████████████

██████████████ ██ ████████████

| | | | | |
|---|---|---|---|---|
| ████ | ██ | ████ | ████ | ██ |
| ████ | ██ | ████ | ██ | ████████████████████ ██████████ |
| ████ | ██ | ████ | ██ | ████████████████████ ████████████ |
| ████ █ | | ████ | ██ | ████████████████████ ██████████ |
| ████ | ██ | ████ | ██ | ████████████████████ ██████████ |
| ████ █ | ██ | ████ | ██ | ████████████████ ██████████ |
| ████ | | ████ | ██ | ████████████████████ ████████ |
| ████ █ | ██ | ████ | ██ | ████████████████████ ██████████ |

████████                         ████████

█████████

███████

████████████

| ████ | ████ |
|---|---|
| ██ | █████████████████████ |
| ████ | █████████████████████ |

Confidential                                                    ACACIA0001820

## EXCLUSIVE LICENSE AGREEMENT

This Exclusive License Agreement (the "Agreement") is entered into by and between **ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE** ("Licensor"), a research institute organized under the laws of Korea, having a principal place of business at 161 Gajeong-dong, Yuseong-gu, Daejeon, 305-350, KOREA, and **ACACIA PATENT ACQUISITION LLC** ("APAC"), a Delaware limited liability company having a principal place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660 (collectively referred to herein as the "Parties" and individually as "Party"). The effective date of this Agreement shall be the date on which the last Party executes this Agreement below (the "Effective Date").

## BACKGROUND

**WHEREAS**, Licensor is the sole and exclusive owner of the **U.S. Patents listed in Exhibit B attached hereto** and all patents, patent applications, foreign patents, foreign patent applications, continuations, continuations–in–part, divisionals, extensions, renewals, reissues and re-examinations related to all inventions thereof (collectively referred to as the "Patents"); and

**WHEREAS**,  and

**WHEREAS**, the Patents are subject to the existing license agreements set forth in Exhibit C (the "Existing Agreements"); and

**WHEREAS**, Licensor is willing to grant worldwide exclusive license rights in the Patents to APAC and APAC in turn, desires to acquire all substantial rights in and to the Patents.

**NOW, THEREFORE,** in consideration of the promises and mutual covenants contained herein and for other good and valuable consideration, Licensor and APAC agree as follows:

1. **GRANT**

   1.1. <u>Exclusive License</u>. Effective immediately upon the date of Acceptable Completion as set forth in <u>Section 1.3</u> below, Licensor grants to APAC all substantial rights in and to the Patents including the worldwide, exclusive right and license under the Patents to make, have made, use, import, offer or sell products or services covered by the Patents, including the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the Patents. Except as expressly set forth in this Agreement, Licensor retains no rights in or to the Patents, including without limitation, the right to sue for and collect past, present and future damages or to seek and obtain injunctive or any other relief for infringement of the Patents and specifically grants APAC all such rights for the term as set forth in <u>Section 7</u> below.

   1.2. <u>Investigation Period</u>. Licensor acknowledges and agrees that APAC shall undertake and perform a due diligence investigation of the Patents during the period of up to thirty (30) days following the Effective Date (the "Investigation Period"). In consideration of APAC's due diligence investigation of the Patents, Licensor agrees that, during the Investigation Period, Licensor shall not discuss, negotiate or pursue with any third parties any offers or proposals with respect to or otherwise relating to any of the Patents.

Confidential

ACACIA0001821

Licensor agrees to cooperate with APAC and to promptly provide to APAC all information in Licensor's possession or control regarding the Patents, including, but not limited to, a copy of the complete prosecution history of each of the Patents (each a "File History") and copies of all files, information and documents relating to the Patents to the extent that the copies are reasonably available and not confidential under applicable law or Licensor's internal regulations. In the event that any of the File Histories or any of the files, information and documents relating to the Patents are not delivered to APAC within the seven (7) day period following the Effective Date, the Investigation Period shall be extended by the greater of the number of days for which the last of the File Histories or any files, information and documents relating to the Patents is delayed, or as mutually agreed by the Parties. On or before the completion of the Investigation Period, APAC shall provide written notice to Licensor of its conclusion regarding the investigation of the Patents. The Investigation Period will commence on the Effective Date and conclude on the earlier of: (i) automatically at 11:59 P.M. Pacific Time, thirty (30) calendar days following, but not including, the Effective Date, subject to the extensions set forth in this Section 1.2, provided that, if the Investigation Period ends on a Saturday, Sunday, or a U.S. Federal holiday, such Investigation Period shall conclude on the next business day; or (ii) such time within the Investigation Period as APAC transmits written notice to Licensor of its conclusion regarding the investigation of the Patents.  Any costs incurred in relation to the due diligence investigation of the Patents, including but not limited to attorneys' costs, the fees and costs of consultants, expert or technical advisors, and patent attorneys review costs, incurred by APAC during the Investigation Period shall be solely borne by APAC and shall not be considered as APAC Costs.

1.3.    Due Diligence Completion. If APAC determines, in its sole and absolute discretion, that any or all of the Patents are acceptable and transmits written notice to Licensor by the end of the Investigation Period that any or all of the Patents are acceptable ("Acceptable Completion"), then this Agreement as it relates to any Patents that are deemed acceptable (the "Accepted Patents"), shall continue with full force and effect following such Acceptable Completion of the Investigation Period. Otherwise, if APAC determines, in its sole and absolute discretion, that any or all of the Patents are not acceptable (the "Non-Elected Patents"), then (i) APAC shall have no payment obligations or liability to Licensor with respect to those Non-Elected Patents, except for the obligations to bear the costs APAC incurs during the Investigation Period under Section 1.2; and (ii) such Non-Elected Patents will be removed from this Agreement and the rights and obligations as to those Non-Elected Patents shall terminate and the Agreement shall only apply to the remaining Accepted Patents. Furthermore, if APAC determines, in its sole and absolute discretion, that all of the Patents are not acceptable, then (i) APAC shall have no payment obligations or liability to Licensor hereunder; and (ii) this Agreement shall automatically terminate upon completion of the Investigation Period. For the purposes of this Section 1.3, written notice of Acceptable Completion (or mutual extension of the Investigation Period) may be sent by first class mail, facsimile, recorded delivery or electronic mail.

1.4.    Obligations of Licensor during the Investigation Period. Notwithstanding anything to the contrary in this Agreement, during the Investigation Period, Licensor will (i) pay all maintenance fees for the U.S. Patents on or before their due dates at the appropriate small or large entity fee rate; (ii) pay all foreign maintenance fees with respect to the Patents on or before their due dates; (iii) continue the prosecution of any and all activities, matters and proceedings before the United States Patent and Trademark Office (the "USPTO") and foreign patent offices relating to the Patents, including without limitation any

Confidential                                                                                    ACACIA0001822

reissues or reexaminations of any issued United States patent and the prosecution and the continuing prosecution of any pending United States or foreign patent applications among the Patents; and (iv) not engage in any activity that may affect the accuracy or completeness of Licensor's representations and warranties in <u>Section 4.1</u> below. Any costs, fees and expenses related to such maintenance, prosecution of the Patents and fees for Licensor's attorney incurred in the negotiation of this Agreement or consulting support provided by Licensor to APAC during the Investigation Period will be borne by Licensor.

1.5.     <u>Exclusivity to APAC</u>. Subject to the limitations set forth in <u>Exhibit A</u> with respect to "Excluded Parties" and the limitations set forth in <u>Exhibit C</u> with respect to "Existing Agreements", the grant to APAC of the exclusive right and license under the Patents herein shall be exclusive with respect to any and all Exclusive Parties (as defined below) and APAC shall have the sole and exclusive right under the Patents to deal with one or more Exclusive Parties in any and all matters relating to the Patents, including without limitation any and all direct and indirect offers for sale and sales of products and services, in whole or in part, covered by the Patents to such Exclusive Parties. The term "Exclusive Party" shall mean:

(a)     a declaratory judgment plaintiff or an infringement defendant under any of the Patents; or

(b)     a party infringing any claim from any of the Patents; or

(c)     a party with which APAC has initiated or undertaken licensing communications, discussions and/or negotiations or otherwise asserted any of the Patents against, provided that an Exclusive Party shall be deemed to include any and all of its affiliates.

## 2.  <u>LICENSE BACK</u>

2.1.     <u>Grant Back License</u>. Subject to Acceptable Completion and Licensor marking each of its products in a conspicuous manner so as to identify each of the applicable Patents embodied in such products (e.g., U.S. Patent No. 6,081,297), APAC shall grant to Licensor a limited, non-exclusive, non-transferable (except as provided for in <u>Section 2.2</u> below), royalty-free right and license under the Patents to make, use, offer or sell Licensor's products or services (the "<u>License</u>"). Other than as detailed herein this <u>Section 2.1</u> with respect to the License, no other rights or licenses under the Patents are granted.

2.2.     <u>License Transferability</u>. The License granted under the Patents may be transferred to a third party (a "Transfer") that is not an Exclusive Party (as defined above in <u>Section 1.5</u>) and is either (i) the purchaser of all or substantially all of the operating assets of Licensor, or (ii) the successor of Licensor in connection with a merger involving the sale of all, or substantially all, of the outstanding capital stock of Licensor (each of (i) and (ii) a "Permitted Transferee"). The Permitted Transferee will assume all the rights and responsibilities of Licensor under the License. Licensor shall provide APAC with thirty (30) days prior written notice of such proposed Transfer. Except in the case of a Permitted Transferee as provided above, the License granted under the Patents is non-transferable and the Licensor acknowledges and agrees that the Licensor shall not cause or permit an Exclusive Party to claim ownership or entitlement to any License or

Confidential                                                                 ACACIA0001823

otherwise obtain or be deemed to obtain, directly or indirectly, any rights, benefits, licenses or immunities, in whole or in part, under any License, whether by, through, as a result of, or otherwise in connection with any agreement, contract, transaction or business combination with Licensor.

## 3. **CONSIDERATION**

3.1.   Royalty Payments. In consideration of the rights assigned to APAC hereunder, Licensor's share of the Net Proceeds (as defined below) shall be equal to fifty percent (50%) of Net Proceeds. APAC's share of the Net Proceeds shall be equal to fifty percent (50%) of Net Proceeds. For purposes hereof, the following terms shall have the following meanings:

"Net Proceeds" shall mean Total Recoveries less the APAC Costs.

"Total Recoveries" shall mean all amounts actually received by APAC from the licensing and enforcement of the Accepted Patents including all licensing proceeds and recoveries from any lawsuits or settlements.

"APAC Costs" shall mean all costs and expenses incurred with third parties by APAC in connection with prosecuting, maintaining, licensing, enforcing or defending the Accepted Patents, including, without limitation:

(a)   attorneys' and paralegal fees (whether on an hourly or contingent basis and whether for general or local counsel), costs and disbursements;

(b)   the fees and costs of consultants, experts or technical advisors;

(c)   travel and lodging expenses

(d)   duplicating, secretarial, stenographer, postage, courier and similar expenses;

(e)   filing fees and other Patent Office fees or costs;

(f)   court costs;

(g)   legal and other costs related to any re-examination or reissue proceeding;

(h)   legal and other costs incurred in defending any action or counterclaim in respect of the Accepted Patents;

(i)   legal and other costs in prosecuting or processing any U.S. or foreign application, including without limitation, any continuing application or continuation in part application;  and

(j)   maintenance fees under Section 5.3;

3.2.   Application of Total Recoveries. Total Recoveries shall be applied in the following order of priority: first to APAC in an amount equal to the APAC Costs, then to APAC and Licensor in proportion to their respective shares of the Net Proceeds. All Taxes (as defined below) shall be the financial responsibility of the Party obligated to pay such Taxes as determined by the applicable law and neither Party is or shall be liable at any

Confidential                                                                      ACACIA0001824

time for any of the other Party's Taxes incurred in connection with or related to amounts paid under this Agreement. The term "Taxes" shall mean any federal, state, local, municipal or other governmental taxes, duties, levies, fees, excises or tariffs, arising as a result of or in connection with any amounts paid under this Agreement, including without limitation:

(a)   any state or local sales or use taxes;

(b)   any import, value added or consumption tax;

(c)   any business transfer tax;

(d)   any taxes imposed or based on or with respect to or measured by any net or gross income or receipts of either Party;

(e)   any franchise taxes, taxes on doing business, gross receipts taxes or capital stock taxes; or

(f)   any other tax now or hereafter imposed by any governmental or taxing authority on any aspect of this Agreement and the obligations hereunder.

If Taxes are required to be withheld on any amounts otherwise to be paid by one Party to the other, the paying Party shall deduct and set off such Taxes from the amount otherwise due and owed to the receiving Party and pay them to the appropriate taxing authority.

3.3.   <u>Reporting/Payments</u>. All amounts payable to Licensor with respect to Net Proceeds, if any, shall be due within thirty (30) calendar days after the end of each calendar quarter (*i.e.* the 31st March, the 30th June, the 30th September and the 31st December of each year). Within thirty (30) calendar days after the end of each quarter that APAC Costs are incurred or Total Recoveries are received, APAC will provide Licensor with a report of Total Recoveries, APAC Costs and Net Proceeds, if any, for such calendar quarter. Licensor shall have the right to audit such reports in accordance with <u>Section 5.2</u> below. All other payments from one Party to the other hereunder shall be due and payable within thirty (30) days following receipt of the applicable invoice.

3.4.   <u>Licensor Availability</u>. Licensor will be available when necessary to assist and consult with APAC or its attorneys on matters relating to the Patents. If any pending applications of the Patents exist, at the request and cost of APAC, the Licensor shall execute all documents including, but not limited to, powers of attorney and perform all acts as may be necessary to enable APAC to control prosecution of such applications. In the event that the testimony of any employee, director, officer, consultant or agent of Licensor is taken in any action relating to the Patents, APAC's attorneys will represent such party without additional charge, and Licensor and such party will cooperate with APAC and its attorneys in preparing for such testimony. APAC will pay for Licensor's actual out of pocket travel expenses incurred at the request of APAC and any such expenses will be treated as an APAC Cost.

## 4.   <u>REPRESENTATIONS AND WARRANTIES</u>

4.1.   <u>Licensor's Representations and Warranties</u>. Licensor represents and warrants to APAC that, as of the Effective Date hereof:

Confidential                                                                                          ACACIA0001825

4.1.1.  Licensor is the sole owner of the Patents as listed in Exhibit B and has all right, title, claims, interest and privileges arising from such ownership, free and clear of any liens, security interests, encumbrances, rights or restrictions;

4.1.2.  the identity of all inventors of the inventions described in the Patents has been fully disclosed to the U.S. Patent Office as required by U.S. law;

4.1.3.  the Patents (i) are not the product or subject of any joint development activity or agreement with any third party; (ii) are not the subject of any consortia agreement; and (iii) have not been financed in whole or in part by any third party;

4.1.4.  the Patents remain in full force and effect as of the Effective Date of this Agreement;

4.1.5.  except for the Existing Agreements set forth in Exhibit C, Licensor has not assigned, licensed or cross-licensed, granted covenants not to sue, transferred or otherwise conveyed to any other person or entity other than the parties listed in Exhibit A any of its rights, title, claims, interest or privileges with respect to the Patents.

4.1.6.  the licenses granted under the Existing Agreements set forth in Exhibit C are non-exclusive licenses and Licensor has not granted any rights to sublicense such license rights;

4.1.7.  Exhibit B includes all patents and patent applications worldwide, including all continuations, continuations-in-part, divisionals, extensions, renewals, reissues and re-examinations related to the Patents, and if any related patents, patent applications, foreign counterparts, continuations, continuations-in-part, divisionals, extensions, renewals, reissues, re-examinations, or any issued patents which are subject to a Terminal Disclaimer under 37 C.F.R. §1.321 are omitted, the Parties agree that they shall be automatically included in such exhibit;

4.1.8.  all maintenance fees that have become due before the Effective Date have been paid in full (i) for U.S. Patents at the appropriate small or large entity fee rate; and (ii) for foreign Patents;

4.1.9.  all prosecution fees related to the Patents that have become due before the Effective Date have been paid in full;

4.1.10. the Patents are not and have not been subject to any action or proceeding concerning their validity, enforceability, inventorship or ownership;

4.1.11. other than the facts included in the File Histories, files, information and documents provided by Licensor to APAC under Section 1.2 above, Licensor has no knowledge of any facts that could give rise to a claim that the Patents are invalid or unenforceable; and Licensor has not engaged in any conduct, or omitted to perform any necessary act, the result of which would invalidate the Patents or preclude their enforceability;

Confidential                                                                          ACACIA0001826

4.1.12. Licensor has all requisite legal and corporate power and authority to enter into this Agreement, to consummate the transactions contemplated hereby, and to carry out and perform its obligations under the terms of this Agreement; and

4.1.13. the execution, delivery, performance of and compliance with this Agreement has not resulted and will not result in any violation of, or conflict with, or constitute a default under (with or without notice or lapse of time, or both), or give rise to a right of termination, cancellation or acceleration of any obligation or loss of any benefit under any agreement to which Licensor is a party.

4.2.  <u>APAC's Representations and Warranties</u>. APAC represents and warrants to Licensor that, as of the Effective Date hereof:

4.2.1.  APAC is a company duly organized and in good standing under the laws of Delaware;

4.2.2.  APAC has authority to enter into this Agreement and implement its terms; and

4.2.3.  the person executing this Agreement on behalf of APAC is duly authorized to do so.

4.3. <u>Third Party Agreement</u>. Licensor acknowledges that because of a preexisting agreement with one or more third parties including its Related Entities ("Third Party Licensee"), upon Acceptable Completion, such Third Party Licensee will obtain or will be granted, either a license and/or a covenant not to sue under the Patents. For the purposes of this Section 4.3, the term "Related Entities" shall mean any entity, including parent companies and majority owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by such Third Party Licensee, is under common control with such Third Party Licensee, or an entity that controls such Third Party Licensee, as well as all predecessors or successors of such entities.

## 5. RECORDS AND FEES

5.1.  <u>Records</u>. APAC shall keep complete and proper records of the Total Recoveries, APAC Costs, and Net Proceeds.

5.2.  <u>Audit</u>. Licensor shall have the right, during reasonable business hours, but no more than once per calendar year, to audit, at Licensor's expense, the correctness of any previously unaudited report by an independent public accountant chosen by Licensor who may examine APAC's records pertinent to this Agreement. To the extent that the Licensor's auditor discovers any errors that resulted in an underpayment of Licensor's respective share of Net Proceeds in an amount greater than ten percent (10%) of the actual amounts due to Licensor following correction of such errors and provided that APAC's own auditors confirm any such errors discovered by the Licensor's auditor that resulted in such underpayments to Licensor, APAC shall (i) promptly pay to Licensor the amounts of such confirmed underpayment; (ii) pay the reasonable and customary fees and costs for such audit by the Licensor's auditor; (iii) and pay one percent (1%) interest per month on the underpayment, which accrues from the date of the underpayment. Licensor and its representatives shall hold in confidence any such information and shall not use the information for any purposes other than verifying APAC's reporting in connection with this Agreement.

Confidential                                                                                           ACACIA0001827

5.3. <u>Maintenance Fees</u>. Subject to Acceptable Completion as set forth in <u>Section 1.3</u>, and for so long as this Agreement is in effect, APAC shall pay all U.S. and foreign maintenance fees with respect to the Accepted Patents on or before their due dates, at the applicable rate. Such payment shall be considered as an APAC Cost. APAC will have sole and absolute discretion in maintaining the Accepted Patents, provided that APAC will provide Licensor with sixty (60) day advance written notice of its determination not to maintain one or more of the Accepted Patents, in which event, Licensor may assume, at Licensor's option, thereafter the right to pay the maintenance fees for such abandoned patents (the "Abandoned Patents"). APAC and Licensor agree that such Abandoned Patents shall be removed from <u>Exhibit B</u> and this Agreement unless there is at least one related U.S. patent, foreign patent or patent application to the Abandoned Patents that APAC continues to pay maintenance fees and therefore, are not Abandoned Patents, in which event, such Abandoned Patents shall not be removed from the Agreement and APAC shall continue its enforcement efforts including paying maintenance fees with respect to such Abandoned Patents.

5.4. <u>Patent Prosecution</u>. Subsequent to Acceptable Completion, during the term of the Agreement, APAC shall assume sole control of any and all activities, matters and proceedings before the United States Patent and Trademark Office (the "USPTO") and foreign patent offices relating to the Accepted Patents, including without limitation any reissues or re-examinations of any issued United States patent, the prosecution of any United States or foreign patent applications and the continuing prosecution of any pending United States or foreign patent applications among the Accepted Patents and the costs, fees and expenses paid by APAC in connection therewith shall be treated as APAC Costs. APAC will have sole and absolute discretion in filing, prosecuting and/or abandoning any patent applications. Licensor hereby grants APAC a power of attorney permitting APAC to assume such sole control of any and all activities, matters and proceedings before the USPTO and foreign patent offices relating to the Accepted Patents and Licensor shall fully cooperate with APAC, including without limitation the execution of such documents as APAC shall reasonably require, to timely address and prosecute all such activities, matters and proceedings before the USPTO and foreign patent offices. However, APAC agrees that prior to abandoning or forfeiting any right or proceeding related to the prosecution of the Accepted Patents, APAC shall provide sixty (60) day notice to Licensor of such impending abandonment or forfeiture and shall give Licensor the opportunity to assume, at Licensor's option, the right to conduct the prosecution with respect to such abandoned patent application (the "Abandoned Application). APAC and Licensor agree that any Patent that is the subject of such Abandoned Application shall be removed from <u>Exhibit B</u> and this Agreement unless there is at least one U.S. patent, foreign patent or patent application related to such Patent that APAC continues to enforce, in which event, such Patent that is the subject of the Abandoned Application shall not be removed from the Agreement and APAC shall continue its enforcement efforts including paying related costs, fees or expenses with respect to such Patents.

## 6. <u>ENFORCEMENT OF PATENT RIGHTS AND COOPERATION</u>

6.1. <u>Good Faith</u>. Subject to the terms and conditions of this Agreement, APAC will use its good faith efforts to pursue licensing and enforcement of the Accepted Patents at its expense. Subject to the limitations with respect to Excluded Parties and Existing Agreements as set forth in <u>Exhibit A</u>

Confidential                                    ACACIA0001828

and Exhibit C attached hereto, APAC will attempt to negotiate licenses with companies that APAC believes may be infringing the Accepted Patents. Notwithstanding any of the foregoing, APAC may at any time elect not to pursue licensing or enforcement of any of the Accepted Patents if APAC determines, in its sole discretion, that any such pursuit would be commercially unreasonable or otherwise unlawful or illegal. In the event APAC elects to not pursue licensing or enforcement of one or more of the Accepted Patents, then (i) APAC will notify Licensor in writing regarding any such rejected Patents (the "Rejected Patents"); (ii) such Rejected Patents will be removed from this Agreement by formal amendment; and (iii) APAC's rights and obligations with respect to the Rejected Patents shall terminate and the Agreement shall only apply to the remaining Patents. APAC shall fully cooperate with Licensor to effectuate the transfer of the rights to such Rejected Patents to the Licensor, including the execution of any reasonably required documents.

6.2.   Enforcement Litigation. Subject to the limitations with respect to Excluded Parties and Existing Agreements as set forth in Exhibit A and Exhibit C attached hereto, APAC may, in its sole judgment, decide to institute enforcement actions against any or all of the companies that APAC believes are infringing the Accepted Patents. APAC shall have the exclusive right to bring suit to enforce the Accepted Patents. Notwithstanding anything to the contrary in Section 1.5 of the Agreement, APAC agrees not to proactively license the Accepted Patents to or initiate an enforcement action with respect to any of the Accepted Patents against the Excluded Parties set forth in Exhibit A and Existing Agreements set forth in Exhibit C attached hereto. Licensor shall join as a plaintiff at APAC's request in the event APAC's counsel determines that Licensor is a necessary party to the action. Licensor hereby grants APAC a power of attorney allowing APAC (i) to add Licensor as a party to any such enforcement action related to the Patents; (ii) to bring an enforcement action related to the Patents directly in Licensor's name; and (iii) to settle any claims relating to the Patents on behalf of Licensor. Regardless of whether Licensor is named as a party to any enforcement action, APAC reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition of such action. In the event Licensor joins as a plaintiff to an enforcement action related to the Patents at APAC's request, APAC brings an enforcement action related to the Patents in Licensor's name, or Licensor is named as a party by another party to such enforcement action related to the Patents, APAC shall defend and indemnify Licensor against all liabilities, costs and expenses arising from such enforcement action related to the Patents, except that, as provided below, Licensor shall be responsible for its own counsel's fees and costs if it elects to retain separate counsel. Notwithstanding any of the foregoing, in the event that a court holds that Licensor has engaged in fraud, gross negligence, or willful misconduct, APAC shall have no obligation to indemnify Licensor for any judgments, liability, loss, damages, costs and expenses (including attorneys' fees and expenses of litigation) in connection therewith.

6.3.   Choice of Counsel. In the event that Licensor joins in any suit, either before or after it is initiated, Licensor shall have the right to be represented by counsel of its choice, provided that if Licensor chooses to have representation separate from APAC, Licensor shall be responsible for paying all its own fees and costs related to such representation and APAC shall be solely responsible for the fees and costs incurred by its own counsel.

6.4.   Cooperation. The Parties agree to fully cooperate with each other in any litigation that is brought and any other matters in connection with licensing, enforcing or defending the Patents.

Confidential                                                                          ACACIA0001829

7. **TERMINATION**

7.1. <u>Term</u>. Unless earlier terminated as provided for in this Agreement, all grants, obligations and provisions recited in this Agreement and relating to the Patents shall continue in full force and effect until the conclusion of APAC's pursuit of licensing and enforcement efforts related to the Patents.

7.2. <u>APAC Bankruptcy</u>. Licensor may terminate this Agreement in the event that APAC files for bankruptcy protection under any state or federal bankruptcy law or a petition for bankruptcy is filed against APAC and not dismissed within ninety (90) days.

7.3. <u>Material Breach</u>. Either Party may terminate this Agreement upon written notice to the other if the other Party breaches any material representation, warranty or agreement in this Agreement and fails to cure such breach within ninety (90) days of receipt of such written notice detailing the alleged breach.

7.4. <u>Commercially Unreasonable</u>. APAC may terminate this Agreement with three (3) month prior notice to Licensor, if APAC determines, in its sole judgment, that licensing or enforcement of the Patents is not commercially reasonable or practicable.

7.5. <u>Termination After Three Years</u>. In the event of Acceptable Completion, Licensor may terminate this Agreement within the ninety (90) day period beginning three (3) years from the date of Acceptable Completion (such ninety (90) day period referred to as the "Termination Period") unless APAC has either (i) filed any action or counterclaim for infringement of any of the Patents, or (ii) generated any Total Recoveries from licensing or enforcement of the Accepted Patents during the three(3) year period (the failure of (i) and (ii) above shall be referred to as a "Termination Event"). In order to terminate this Agreement pursuant to this <u>Section 7.5</u>, within the Termination Period, Licensor shall provide APAC with written notice of its intention to exercise its right to terminate this Agreement under this <u>Section 7.5</u>, at which time APAC shall have a ninety (90) day period from the time it receives such notice, in which it may cure the Termination Event giving rise to the right of termination (the "Cure Period") by either (i) filing an action (or counterclaim) to enforce any of the Accepted Patents or (ii) generating Total Recoveries and paying Licensor its share of the Net Proceeds, if any. If Licensor does not give APAC notice of its intention to terminate within the Termination Period or APAC cures the Termination Event during the Cure Period, then Licensor's right to terminate this Agreement under this <u>Section 7.5</u> shall lapse.

7.6. <u>Termination After Eight Years</u>. Licensor may terminate this Agreement if no Total Recoveries have been generated in the five (5) year period from the earlier of (i) the end of the Termination Period under <u>Section 7.5</u>; or (ii) the time when APAC cures the First Termination Event during the Cure Period under <u>Section 7.5</u>. In order to terminate this Agreement pursuant to this <u>Section 7.6</u>, Licensor shall provide APAC with written notice of its intention to exercise its right to terminate this Agreement under this <u>Section 7.6</u>.

7.7. <u>Final Decision</u>. In the event of any dispute as to whether a Party has breached this Agreement pursuant to <u>Section 7.3</u> above or whether a cure has been effected, the matter shall be resolved according to <u>Section 9</u> hereof, and there shall be no termination of the license under this Agreement unless and until there is a final decision that there has been an uncured breach, as provided herein.

Confidential                                                                      ACACIA0001830

7.8.   <u>Licensor Payments after Termination</u>. Any termination of this Agreement shall not relieve APAC of liability for any payments due to Licensor accrued prior to the effective date of such termination.

7.9.   <u>APAC Payments after Termination</u>. In the event of any termination of this Agreement, regardless of the cause, after payment of any monies due Licensor, APAC shall be entitled to retain or receive the portion of Total Recoveries (that is, APAC's share of the Net Proceeds) that it would be entitled to retain or receive if this Agreement were in effect, which (i) accrued or was received prior to the termination date, (ii) accrues or is received after the termination date as a result of any settlement, license agreement or other agreement or transaction that was negotiated, made or occurred prior to the termination date, or (iii) resulted from any lawsuit or negotiations that were pending at or prior to the occurrence of such termination.

7.10.  <u>Licensor Bankruptcy</u>. The Parties acknowledge and agree that this Agreement is a contract under which APAC is a licensee of intellectual property as provided in Section 365(n) of title 11, United States Code (the "Bankruptcy Code"). Licensor acknowledges that if Licensor, as a debtor in possession or a trustee in bankruptcy in a case under the Bankruptcy Code (the "Bankruptcy Trustee"), rejects this Agreement, APAC may elect to retain all of its rights under this Agreement as provided in Section 365(n) of the Bankruptcy Code. Upon written request of APAC to Licensor or the Bankruptcy Trustee, Licensor will not interfere with any of the rights of APAC as provided in this Agreement.

## 8.  ASSIGNMENT

8.1.   <u>Assignment/Successors</u>. Licensor may transfer or assign its interest in this Agreement (as distinguished from the transferability of the License as set forth in <u>Section 2.2</u> above) provided that the transferee or assignee (i) is not an Exclusive Party as defined in <u>Section 1.5</u> above; and (ii) agrees to be bound by the terms of this Agreement in writing. APAC may transfer or assign its interest in this Agreement to an affiliate of APAC provided that such affiliate agrees to be bound by all the terms and conditions of this Agreement in writing, including the obligation to make payments hereunder. This Agreement shall inure to the benefit of, and be binding upon the respective successors, assigns, heirs, beneficiaries and personal representatives of Licensor and APAC. Nothing in this Agreement, whether expressed or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

## 9.   GOVERNING LAW AND CONSENT TO JURISDICTION

9.1.   <u>Choice of Laws</u>. This Agreement shall be governed by and construed under applicable laws of the State of New York, excluding any conflict of law provisions.

9.2.   <u>Venue/Jurisdiction.</u> The Parties hereby irrevocably and unconditionally (a) submit to the exclusive jurisdiction of the state and federal courts in New York, over any action, suit, claim or proceeding arising out of or relating to this Agreement, (b) waive any objection to the laying of venue of any such action, suit, claim or proceeding brought in such New York courts and any claim that any such action, suit, claim or proceeding brought in such

Confidential                                    ACACIA0001831

New York courts has been brought in an inconvenient forum, and (c) agree that final judgment in any such action, suit, claim or proceeding in such New York courts shall be conclusive and binding upon the Parties and may be enforced in any other courts to whose jurisdiction the Party against whom enforcement is sought may be subject, by suit upon such judgment. To the extent permitted by law, the Parties hereby irrevocably waive trial by jury.

9.3.   <u>Consequential Liability</u>. Neither APAC nor Licensor shall be liable for any consequence or damage arising out of or resulting from the manufacture, use or sale of products under the Patents. In no event shall either Party be entitled to special, indirect, consequential damages, including lost profits, or punitive damages for breach of this Agreement.

## 10. CONFIDENTIALITY

10.1.   Except for the existence of this Agreement, all information provided pursuant to this Agreement, including without limitation, the terms of this Agreement, shall be regarded as confidential information ("Confidential Information"). For the avoidance of doubt, even if the Patents are not acceptable under <u>Section 1.3</u>, all information [other than information described in (a), (b) or (c) below] provided under <u>Section 1.2</u> shall be regarded as Confidential Information. The Parties agree that, other than as required by law, they shall not disclose any Confidential Information and shall use the Confidential Information only for the purposes set forth herein. Licensor acknowledges that APAC's parent company, Acacia Research Corporation ("Acacia"), is a publicly traded company, and that Acacia may be required by applicable laws to publicly disclose the signing of this Agreement, as well as certain terms of the Agreement. Either Party may disclose Confidential Information to its financial advisors, partners, consultants and legal advisors subject to confidentiality obligations at least as stringent as those provided in this Agreement. Confidential Information shall not include information that:

(a)   was already known, otherwise than under an agreement of secrecy or non-use, at the time of its disclosure;

(b)   has passed into the public domain prior to or after its disclosure, otherwise than through any act or omission attributable to principals, officers, employees, consultants or agents of the receiving Party; or

(c)   was subsequently disclosed, otherwise than under an agreement of secrecy or non-use, by a third party that had not acquired the information under an obligation of confidentiality.

10.2.   <u>Preservation of Privilege</u>. The Parties agree that they may disclose Confidential Information in furtherance of their common legal interest in exploring business opportunities involving the Patents, including litigation involving one or more of such Patents. Such Confidential Information may be subject to the attorney-client privilege, work product doctrine or other applicable privilege. The Parties understand and agree that it is their desire, intention and mutual understanding that the sharing of such Confidential Information is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information provided by a Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to

Confidential
ACACIA0001832

such protection under these privileges, this Agreement, and under the joint defense doctrine. Nothing in this Section 10.2 shall be interpreted to mean that a Party hereto would be prevented from using Confidential Information in a legal proceeding against the other Party hereto based upon a dispute arising out of this Agreement; provided that the other Party has been notified in advance of such use or disclosure and been afforded sufficient opportunity to seek and obtain confidential treatment by the court or other entity having jurisdiction over the matter at hand.

## 11. MISCELLANEOUS

11.1.   Notice. Except as allowed in Section 1.3 herein with respect to written notification of Acceptable Completion, all notices or communications which either Party may desire, or be required, to give or make to the other shall be in writing and shall be deemed to have been duly given or made if and when forwarded by registered mail, certified mail, or recognized overnight courier to the address set forth below or to such other address as a Party shall give to the other in writing delivered at the last address specified in the manner prescribed by this Agreement.

To APAC:
**ACACIA PATENT ACQUISITION LLC**
500 Newport Center Drive
7th Floor
Newport Beach, CA 92660
Phone: (949) 480-8300
Fax: (949) 480-8379

To Licensor:
**ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE**
161 Gajeong-dong,
Yuseong-gu, Daejeon, 305-350, KOREA
Phone: 82 42 860 0757
Fax: 82 42 860 3831

If no confirmation of receipt is available or such notice is refused, the Parties agree that for the purposes herein, notice shall be deemed to have been duly given or made three (3) business days after forwarding such notice to the other Party.

11.2.   No Waiver. The failure to act upon any default hereunder shall not be deemed to constitute a waiver of such default.

11.3.   Provision Invalidity. If for any reason in any jurisdiction in which any provision of this Agreement is sought to be enforced, any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect, such holding shall not affect any other provision of this Agreement and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained therein.

11.4.   Counterparts. This Agreement may be executed in several counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. A faxed or e-mailed copy of a signature page shall be considered an original for purposes of this Agreement.

Confidential                                                                 ACACIA0001833

11.5.   <u>Headings</u>. The headings contained in this Agreement have been inserted for convenient reference only and shall not modify, define, expand or limit any of the provisions of this Agreement.

*(Signatures on Next Page)*

11.6.   <u>Entire Agreement</u>. This Agreement constitutes the entire understanding of the Parties with respect to its subject matter and may not be modified or amended, except in writing by the Parties.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement as of the date set forth below.

**ELECTRONICS AND TELECOMMUNICATIONS RESEARCH INSTITUTE**

**ACACIA PATENT ACQUISITION LLC**

By:_____

By:_____

Print Name: _____

Print Name:_____

Title: _____

Title:_____

Date:_____

Date:_____

Confidential                                                                 ACACIA0001834

## **EXHIBIT A**



Confidential

ACACIA0001835

**EXHIBIT B**



Confidential                                                                                    ACACIA0001836

███████

████████████

| PARTY | ███ |
|---|---|
| **HTC** | ████████████████████ |
| **APPLE** | ████████████████████ |

Confidential                                                    ACACIA0001837